UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIZA WILDER,

                              Plaintiff,

    -v-                                                          No. 14-cv-10072 (RJS)
                                                                    OPINION & ORDER

DAVID J. SHULKIN, *Secretary
of Veterans Affairs*,

                              Defendant.

RICHARD J. SULLIVAN, District Judge:

       Plaintiff Tiza Wilder ("Plaintiff"), a former employee of the United States Department of Veterans Affairs ("VA") proceeding *pro se* and *in forma pauperis*, brings this suit against Secretary of Veterans Affairs David J. Shulkin ("Defendant") in his official capacity alleging discrimination on the basis of gender, race, and color in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.* ("Title VII")), the New York State Human Rights Law (N.Y. Exec. L. § 296 ("NYSHRL")), and the New York City Human Rights Law (N.Y.C. Admin. Code § 8–107, *et seq.* ("NYCHRL")).[1] (Doc. No. 75 ("SAC" or "Second Amended Complaint").) Now before the Court is Defendant's renewed motion to dismiss the Second Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is granted.

---

[1] At the time the Second Amended Complaint was filed, the named defendant, Robert McDonald, was serving as Secretary of Veterans Affairs. Since then, Secretary McDonald has stepped down, and the current Secretary of Veterans Affairs is David J. Shulkin. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Secretary Shulkin is automatically substituted as a party. *See, e.g.*, *Rodriguez v. Colvin*, No. 12-cv-3931 (RJS) (RLE), 2014 WL 5038410, at *20 (S.D.N.Y. Sept. 29, 2014) (automatically substituting Commissioner of Social Security under Rule 25(d) upon resignation and appointment of a new commissioner).

## I. BACKGROUND[2]

### A. Facts

The Court presumes the parties' familiarity with the underlying facts and procedural history of this case, which are detailed in the Court's March 31, 2016 Opinion and Order (Doc. No. 60 (the "March 2016 Opinion" or "Mar. 2016 Op.")), and offers only a short summary of each for the purposes of this motion. Plaintiff worked for the VA from March 16, 2008 through April 16, 2013 as a veteran service representative. (SAC at 8.) As a VA employee, Plaintiff was a member of the American Federation of Government Employees, AFL-CIO, Local 1151 (the "Union"), which had a collective bargaining agreement ("CBA") with the VA that was in effect at the time of Plaintiff's termination. (Doc. Nos. 75-3 at 28–77, 75-4, 75-5, 75-6, 75-7.) Article 43 of the CBA sets forth a "negotiated grievance procedure" under which "the Union may file a grievance" on its members' behalf to remedy "any claimed violation, misinterpretation or misapplication of law, rule, or regulation affecting conditions of employment." (Doc. No. 75-6 at 39–44.) The CBA also provides that any grievance that is "not satisfactorily resolved . . . may be referred to arbitration" by either the Union or the VA. (*Id.* at 42.)

On March 8, 2013, Veterans Service Center Manager Joseph Corretjer sent a letter notifying Plaintiff of her proposed removal by the VA and setting forth several reasons for the termination, including multiple episodes of insubordination on Plaintiff's part. (Doc. No. 75-1 at 22–25.) After receiving Plaintiff's response to these allegations on April 3, 2013, Sue Malley, the Director of the VA's New York Regional Benefit Office, sent Plaintiff a letter informing her that she would be terminated on April 16, 2013. (Doc. No. 75-1 at 33–37.) Ms. Malley's letter

---

[2] The following facts are taken from the Second Amended Complaint and its attachments, and are accepted as true for the purpose of deciding this motion. The Court has also considered Defendant's brief in support of dismissal (Doc. No. 79 ("Mem.")), Plaintiff's opposition (Doc. No. 81 ("Opp'n")), and Defendant's reply (Doc. No. 82 ("Reply")).

also made clear that if Plaintiff wished to challenge the VA's termination decision, she could do so by, among other things: (1) filing a grievance under the CBA's "negotiated grievance procedures" within 30 calendar days after being notified of her termination; (2) submitting a complaint sounding in discrimination to the VA's Office of Resolution Management ("ORM") – which processes Equal Employment Opportunity ("EEO") complaints on behalf of the VA in accordance with regulations set forth by the Equal Employment Opportunity Commission ("EEOC") – within 45 calendar days of her termination; or (3) submitting an appeal to the Merit Systems Protection Board ("MSPB") within 30 calendar days after her termination.[3] (*Id.* at 36–37.) The letter also advised Plaintiff that whichever of these remedies she pursued would be "considered an election by [her] to proceed under that appeal process." (*Id.* at 37.)

Plaintiff elected the first of these – the negotiated grievance procedure – and on May 6, 2013, she filed an eight-page grievance pursuant to Article 43, Section 7.B of the CBA, which required her to "state, in detail, the basis for [her] grievance and the corrective action desired." (Doc. Nos. 75-1 at 40–47, 76-6 at 42.) In her complaint, Plaintiff denied the various allegations of insubordination raised by the VA, complained of intrusive and harassing behavior by her co-workers, and characterized the VA as a "hostile work environment," alleging, among other things, that her co-worker, Tina Cyran, stole Plaintiff's Social Security number and downloaded her emails, and that her supervisor George Seper engaged in "harassment" when he "aggressively" "confronted" Plaintiff regarding her alleged failure to complete necessary employment paperwork. (Doc. No. 75-1 at 41–42, 44.) Plaintiff did not, however, allege that the VA terminated her because of her gender, race, or color, and Plaintiff did not attribute any of the incidents of "harassment" to discrimination based on any of these protected characteristics.

---

[3] As explained later in greater detail, the MSPB is an administrative adjudicatory body where federal employees may challenge "particularly serious" personnel actions, including removal. *Perry v. MSPB*, No. 16-399, _ S. Ct. _,

(*Id.*)  In fact, Plaintiff's grievance provided no information regarding her gender, race, or color. (*Id.*)

On May 20, 2013, the VA denied Plaintiff's request for reinstatement, and on June 3, 2013, Plaintiff invoked her right under the CBA to have the Union bring her claim against the VA in arbitration.  (Doc. Nos. 75-1 at 56, 75-3 at 14.)  Although Tammy Espinal, the Union's chief shop steward, and Anthony Jones, the Union's president, originally promised Plaintiff that the Union would handle the arbitration on her behalf (Doc. Nos. 75-2 at 7, 75-3 at 26), the Union subsequently informed Plaintiff in a letter, dated June 11, 2013, that it was "not in a position to finance and/or handle" her arbitration (Doc. No. 75-1 at 60; *see also id.* at 58).  Nevertheless, the Union also made clear that it would "invoke arbitration on [Plaintiff's] grievance if [she] agree[d] to pay the expenses of that arbitration."  (*Id.* at 60.)  On June 17, 2013, Plaintiff contacted Jones to inform him that she did not wish to proceed with arbitration.  (*Id.* at 64.)  Instead, Plaintiff appealed the denial of her grievance to the MSPB on June 19, 2013 (Doc. No. 75-2 at 9–10), which dismissed her complaint on jurisdictional and statute-of-limitations grounds on July 25, 2013 (Doc. No. 75-3 at 13–25).

In May 2014 – more than a year after her termination on April 16, 2013 – Plaintiff made "several attempts to contact" the EEOC for the purpose of alleging in that forum that the VA terminated her on the basis of her gender in violation of Title VII.  (*Id.* at 26–27.)  On July 9, 2014, Plaintiff filed an administrative complaint with the EEOC, which issued a right-to-sue letter on September 9, 2014.  (SAC at 3–4, Doc. No. 75-2 at 20–23, 40–43.)  In the right-to-sue letter, the EEOC concluded that it "does not have jurisdiction to investigate allegations of employment discrimination made against another federal agency" and, therefore, it would not

---

\_\_, 2017 WL 2694702, at *3 (U.S. June 23, 2017) (citations omitted).

4

undertake any "further investigation and/or action" with regard to Plaintiff's charge. (Doc. No. 75-2 at 20.)

B. Procedural History

On December 2, 2014, Plaintiff initiated the instant suit. (Doc. No. 1.) In her original complaint, Plaintiff alleged that that the VA discriminated against her on the basis of her race, color, and gender in violation of federal, state, and local law, and that the Union breached its duty of fair representation in violation of federal law. (*Id.*) On March 31, 2016, the Court granted Defendants' motion to dismiss all claims. However, although the Court dismissed Plaintiff's claims against the Union with prejudice in light of the Federal Labor Relations Authority's "exclusive jurisdiction" over such claims when brought by federal employees, the Court granted Plaintiff leave to replead her claim for employment discrimination under Title VII against the Secretary of Veterans Affairs. (Mar. 2016 Op. at 11–12 (citing *Wisham v. Comm'r of IRS*, No. 08-cv-8926 (DLC), 2009 WL 2526245, at *3 (S.D.N.Y. Aug. 19, 2009)).) The Court instructed Plaintiff to include in her amended complaint "facts that are relevant to whether she is entitled to equitable tolling, since absent a finding that equitable tolling is applicable, Plaintiff's discrimination claim is untimely and must be dismissed with prejudice." (*Id.* at 13.) The Court also offered guidance to Plaintiff as to the specific facts to include in her amended complaint:

> Plaintiff should provide additional facts as to her interactions with the EEOC and why she filed her EEOC complaint as late as she did (in July 2014). Further, to the extent that there are additional facts not currently alleged in the Complaint that indicate pre-July 2014 efforts by Plaintiff to raise a discrimination claim, including through the grievance procedure, Plaintiff should include such information in her amended complaint as well.

(*Id.* at 13–14.) On May 4, 2016, Plaintiff submitted an amended complaint (Doc. No. 64), and on June 3, 2016, Defendant filed a motion to dismiss the amended complaint (Doc. No. 68). On August 10, 2016, Plaintiff requested leave to file a second amended complaint (Doc. No. 75),

5

which the Court granted pursuant to Rule 15 of the Federal Rules of Civil Procedure on September 8, 2016 (Doc. Nos. 76, 77). On October 7, 2016, Defendant renewed his motion to dismiss (Doc. No. 78), which was fully briefed on November 16, 2016 (Doc. No. 82).

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id*. at 570.

Where, as here, a plaintiff proceeds *pro se*, the Court must "liberally" construe her submissions and "interpret them to raise the strongest arguments that they suggest." *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.

1994)). Nonetheless, "a *pro se* complaint must [still] allege 'enough facts to state a claim to relief that is plausible on its face.'" *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Twombly*, 550 U.S. at 570).

III. DISCUSSION

A. State Law Claims

At the outset, the Court notes that Plaintiff has once again indicated on the *pro se* complaint form that, in addition to suing under Title VII, she also seeks relief under the NYSHRL and NYCHRL. (SAC at 1.) As the Court made clear in the March 2016 Opinion, however, Title VII is "the exclusive remed[y] available to federal employees who allege employment discrimination" on the basis of gender, color, or race. *Lucenti v. Potter*, 432 F. Supp. 2d 347, 356 (S.D.N.Y. 2006) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 825–33 (1976) and *Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir. 1996)). Accordingly, Plaintiff's claims under the NYSHRL and NYCHRL must be dismissed.

B. Exhaustion of Remedies

1. CSRA and Title VII Grievance Procedures

Under the Civil Service Reform Act ("CSRA"), federal employee unions and agencies must "include procedures for settling grievances in their collective bargaining agreements." *Fernandez v. Chertoff*, 471 F.3d 45, 52 (2d Cir. 2006). If the complainant pursues this "'negotiated grievance procedure'" and her claim is "'not satisfactorily settled,'" her grievance is "'subject to binding arbitration' which may be invoked by either party." *Dep't of Treasury, I.R.S. v. Fed. Labor Relations Auth.*, 494 U.S. 922, 924 (1990) (quoting 5 U.S.C. § 7121(b)(3)(C)). These "negotiated grievance procedures" are, as a general matter, "'the exclusive administrative procedure[s] for resolving grievances" that fall within the collective

bargaining agreement's scope. *Fernandez*, 471 F.3d at 52 (quoting 5 U.S.C. § 7121(a)(1)). In other words, subject to a limited number of exceptions, "a federal government employee cannot obtain a remedy for a violation of the CSRA in a federal district court." *Ugarte v. Johnson*, 40 F. Supp. 2d 178, 181 (S.D.N.Y. 1999); *accord Arterburn v. Manhattan Dist. of Internal Revenue Serv.*, No. 98-cv-1392 (JG), 1999 WL 891517, at *2 (E.D.N.Y. Oct. 13, 1999) ("With certain exceptions . . . the grievance procedures created by the collective bargaining agreement 'shall be the exclusive procedures for resolving grievances which fall within its coverage.'" (quoting 5 U.S.C. § 7121(a)(1)).

In the alternative, Federal employees may bring challenges to "particularly serious" personnel actions, such as "a removal from employment or a reduction in grade or pay," to the MSPB, an administrative adjudicatory body established under the CSRA. *Perry*, 2017 WL 2694702, at *3 (citations omitted); *Walia v. Napolitano*, 986 F. Supp. 2d 169, 181 (E.D.N.Y. 2013) (explaining that "[a]n employee may" only challenge "directly to the MSPB" the following actions: "(1) removal, (2) suspension for more than fourteen days, (3) reduction in grade, (4) reduction in pay, and (5) a furlough of thirty days or less"). The United States Court of Appeals for the Federal Circuit is the exclusive venue for appeals from MSPB adjudications that do not sound in discrimination. *See Kloeckner v. Solis*, 568 U.S. 41, 45–46 (2012).

Congress has, however, granted Article III district courts jurisdiction over federal employees' complaints of employment discrimination under Title VII. *See Fernandez*, 471 F.3d at 54. Even so, when "discrimination is alleged [under] Title VII" by an aggrieved federal employee, the employee "must negotiate and exhaust the complex administrative regime that governs Title VII public employment cases in addition to the usual procedures for challenging an adverse personnel action under" the CSRA. *Butler v. West*, 164 F.3d 634, 638 (D.C. Cir. 1999)

(citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832–33 (1976)). The federal employee's path to district court depends, among other things, on whether: (1) she elects to pursue her discrimination claim under the "negotiated grievance procedure" or under an alternative, "statutory" procedure, and (2) her discrimination claim is classified as a "pure discrimination case" or a "mixed case appeal." *See Fernandez*, 471 F.3d 52–55.

An employee who pursues the negotiated grievance procedure "in a pure discrimination case" – that is, a grievance "in which solely claims of discrimination are involved," *Delaney v. LaHood*, No. 07-cv-471 (JG) (WDW), 2009 WL 3199687, at *15 n.9 (E.D.N.Y. Sept. 30, 2009) – "must appeal the arbitrator's award to the EEOC before bringing suit," *Fernandez*, 471 F.3d at 54. Moreover, such an appeal must be filed with the EEOC "within 30 days of [the] complainant's receipt" of the arbitrator's "final decision." *Id.* An employee who pursues a "mixed case – one involving both a claim of discrimination and a challenge to other types of prohibited personnel actions," *Delaney*, 2009 WL 3199687, at *15 n.9 – "must first appeal the arbitrator's decision to the MSPB before seeking judicial review," *Fernandez*, 471 F.3d 54–55 (citation omitted).

In addition, a federal employee complaining of employment discrimination "may elect to seek relief under an alternative procedure, designated as the statutory procedure," before bringing suit in federal court. *Id.* at 52 (quoting 5 U.S.C. § 7121(a)(1)). An "aggrieved employee" commences this "statutory procedure" by "consult[ing] with a counselor at the agency's Equal Employment Office ('EEO') within 45 days of the alleged discriminatory act." *Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001) (setting forth the various steps a federal employee must take before bringing suit in federal court under the statutory procedure). With respect to a "mixed case appeal," the federal employee may, instead of consulting with the EEO,

submit her case "directly to the MSPB," *Fernandez*, 471 F.3d at 53, "within 30 days of the effective date of the adverse employment action," *Moore v. Potter*, 217 F. Supp. 2d 364, 370–71 (E.D.N.Y. 2002) (summarizing the steps an employee must take before bringing a "mixed case appeal" in federal court). "The law does not," however, "allow federal employees to file charges of discrimination *directly* with the EEOC" without first pursuing remedies under either the statutory or negotiated procedures. *Jenkins v. Holder*, No. 11-cv-0268 (NGG) (CLP), 2014 WL 1311449, at *10 (E.D.N.Y. Mar. 28, 2014) (emphasis added) (citing 29 C.F.R. § 1614.302(b)).

The law is also clear that an "employee who alleges a discriminatory personnel practice 'must elect to pursue [her] claim under either a statutory procedure or a union-assisted grievance procedure; [she] cannot pursue both avenues, and [her] election is *irrevocable*.'" *Fernandez*, 471 F.3d at 52 (emphasis in original) (quoting *Vinieratos v. U.S. Dep't of the Air Force*, 939 F.2d 762, 768 (9th Cir. 1991)). In other words, "[w]hichever route the employee chooses, [she] must exhaust all applicable administrative remedies prior to pursuing [her] claim in court," and "when claims are brought via a negotiated grievance procedure, plaintiffs are barred from raising claims pertaining to the same matter via a 'statutory procedure' . . . ." *Delaney*, 2009 WL 3199687, at *12 (citing *O'Dwyer v. Snow*, No. 00-cv-8918 (LTS) (FM), 2004 WL 444534, at *7 (S.D.N.Y. Mar. 10, 2004)).

The Supreme Court has underscored that these procedural requirements "are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1994). In fact, even though "failure to exhaust administrative remedies is an affirmative defense that should generally be asserted in an answer," *Galberth v. Washington*, No. 14-cv-691 (KPF), 2016 WL 1255738, at *5 (S.D.N.Y. Mar. 29, 2016), courts in this Circuit routinely dismiss complaints at the Rule 12(b)(6) stage for failure to exhaust

administrative remedies under the CSRA and Title VII – including claims brought by federal employees proceeding *pro se* – where such failure is clear from the face of the complaint, *see, e.g.*, *Lee v. Colvin*, No. 15-cv-1472 (KPF), 2017 WL 486944, at *6–9 (S.D.N.Y. Feb. 6, 2017); *Ercole v. LaHood*, No. 07-cv-2049 (JFB) (AKT), 2011 WL 1205137, at *6–9 (E.D.N.Y. Mar. 29, 2011), *aff'd*, 472 F. App'x 47 (2d Cir. 2012); *Wisham*, 2009 WL 2526245, at *6; *Savarese v. U.S. Dep't of Hous. & Urban Dev.*, No. 04-cv-3660 (DC), 2005 WL 387152, at *4 (S.D.N.Y. Feb. 16, 2005); *Ghaly v. U.S. Dep't of Agric.*, 228 F. Supp. 2d 283, 288 (S.D.N.Y. 2002); *see also Morgan v. Williams*, No. 09-cv-3288 (TPG), 2010 WL 1253464, at *2 (S.D.N.Y. Mar. 24, 2010) ("Numerous courts in this district have found the failure to exhaust administrative remedies in the Title VII context sufficient grounds to grant a motion to dismiss pursuant to Rule 12(b)(6)." (collecting cases)).

2. Application

The Court concludes, as it did in the March 2016 Opinion, that Plaintiff failed to exhaust her administrative remedies under the CSRA and Title VII. Although Plaintiff commenced the negotiated grievance procedure, she failed to complete that process because she declined to proceed with arbitration. (Doc. No. 75-1 at 58, 60, 64.) That alone is grounds for dismissing Plaintiff's claim. *See, e.g.*, *Savarese*, 2005 WL 387152, at *4 (dismissing for failure to exhaust where plaintiff had not completed arbitration under negotiated grievance procedure).

But even if Plaintiff had accepted the Union's offer to initiate arbitration on her behalf, and had completed that process, it is nonetheless clear that Plaintiff would still not be able to seek "judicial review of, or assert any claims arising from, her Grievance Complaint in this Court," since Plaintiff did not raise any allegations of gender, race, or color discrimination during the negotiated grievance process in her initial grievance. (Mar. 2016 Op. at 10 n.2.)

11

Although Plaintiff's eight-page May 6, 2013 grievance denied the various allegations of insubordination contained in Ms. Malley's letter and repeatedly asserted that her colleagues "harassed" her, Plaintiff did not aver that she was terminated on account of her gender, color, or race, and she did not relate any of the incidents of "harassment" to any protected characteristic. (Doc. No. 75-1 at 40–47); *see also Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) (to bring a hostile work environment claim under Title VII, "[a] plaintiff must . . . demonstrate that she was subjected to the hostility *because of* her membership in a protected class." (emphasis added)). And while it is true that Plaintiff also filed an appeal to the MSPB on June 19, 2013, her election to proceed with the negotiated grievance procedure precluded her from seeking relief under the statutory grievance process before the MSPB or the VA's ORM. *See Fernandez*, 471 F.3d at 52. Furthermore, Plaintiff all but acknowledges that she never alleged employment discrimination in her MSPB appeal, and the MSPB's decision dismissing her case makes no reference to an employment discrimination claim. (*See* Doc. Nos. 75-2 at 9–10, Doc. No. 75-3 at 16 & n.1 (noting that Plaintiff "failed to file a discrimination complaint").) Accordingly, the Court once again concludes that Plaintiff has "failed to allege any facts from which the Court could reasonably infer that" she "raised a discrimination claim" at any point during the negotiated grievance process or, for that matter, before the MSPB. (Mar. 2016 Op. at 10 n.2); *Delaney*, 2009 WL 3199687, at *13 (plaintiffs were "barred in this court from bringing discrimination claims under Title VII" because, even though they "could have alleged discrimination claims in their grievance, they argued only that they committed no misconduct, and that the discipline imposed was too severe"); *Savarese*, 2005 WL 387152, at *4 (employee who invoked union grievance procedure failed to exhaust remedies where his "written grievances did not specifically allege discrimination," notwithstanding his subsequent attempt to

bring a discrimination claim before his employer's EEO); *Ugarte*, 40 F. Supp. 2d at 181 (where plaintiff "raised no . . . discrimination claims" at initial stage of grievance process, district court lacked "jurisdiction to review her case"); *see also Perry*, 2017 WL 2694702, at *9 (explaining that "the key" to determining whether an employee has brought a mixed claim appealable to a district court, as opposed to a non-discrimination claim appealable to the Federal Circuit, is whether the employee brings a "'claim'" before the MSPB "'that an agency action . . . violates an antidiscrimination statute . . . .'" (quoting *Kloeckner*, 568 U.S. at 56)).

Finally, the fact that Plaintiff filed a complaint with the EEOC that *did* allege discrimination on the basis of her gender in July of 2014 (Doc. No. 70-2 at 20–23) makes no difference here, since "[t]he law does not allow federal employees to file charges of discrimination directly with the EEOC" before completing the preliminary stages of the statutory or negotiated grievance procedures, *Jenkins*, 2014 WL 1311449, at *10. In any event, Plaintiff's EEOC complaint was filed more than 300 days after her termination and is therefore also time-barred under EEOC regulations. *See Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015).

In sum, it is clear that Plaintiff failed to exhaust her administrative remedies under the CSRA and Title VII.

### C. Equitable Tolling

Because a federal employee's "failure to exhaust his administrative remedies is not a jurisdictional defect, it is subject to equitable defenses." *Fernandez*, 471 F.3d at 58. "Where failure to exhaust has been established, it is the plaintiff's burden to demonstrate 'the appropriateness of equitable tolling,'" and that "burden is a heavy one," *Lee*, 2017 WL 486944, at *6 (quoting *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000)), since "[e]quitable tolling

13

applies only in the rare and exceptional circumstance," *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (citation and internal quotation marks omitted). Specifically, the plaintiff must show both that: (1) she "has been pursuing [her] rights diligently," and (2) "some extraordinary circumstance stood in [her] way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). In Title VII cases, this remedy is "generally 'appropriate only where the defendant has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights, or has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum.'" *Mazurkiewicz v. N.Y.C. Health & Hosps. Corp.*, 356 F. App'x 521, 522 (2d Cir. 2009) (quoting *Smith v. Am. President Lines, Ltd.*, 571 F.2d 102, 109 (2d Cir. 1978)); *see also, e.g.*, *Chalasani v. Fran*, No. 13-cv-6535, (LAK) (SN), 2015 WL 2129773, at *5 (S.D.N.Y. Feb. 13, 2015) (granting motion to dismiss and concluding Title VII plaintiff was "not entitled to equitable tolling," notwithstanding plaintiff's visit to her "ailing father in India," her alleged loss of "20 years' worth of belongings" following her eviction, and her suffering from "major clinical depression due to losing her job and a series of family traumas" during relevant filing period), *report and recommendation adopted*, 2015 WL 2137707 (S.D.N.Y. May 6, 2015), *appeal dismissed* (Jan. 21, 2016). Although equitable tolling entails a fact-intensive inquiry that often cannot be resolved at the Rule 12(b)(6) stage, *see, e.g.*, *Zhou v. Wu*, No. 14-cv-1775 (RJS), 2015 WL 925962, at *4 (S.D.N.Y. Mar. 3, 2015), dismissal at the pleading stage is nonetheless appropriate when a plaintiff fails to "suggest a plausible basis for equitable tolling," *Lomako v. N.Y. Inst. of Tech.*, 440 F. App'x 1, 3 (2d Cir. 2011).

For her part, Plaintiff has not pointed to any facts that would support a plausible inference that the VA "actively misled" her regarding the grievance process. *Mazurkiewicz*, 356 F. App'x at 522. To the contrary, she concedes that on April 10, 2013, six days before her

termination took effect, the VA outlined the various grievance procedures available to challenge her termination, including both the negotiated and statutory processes. (Doc. No. 75-3 at 16.) Nor is this a situation in which Plaintiff "raised the precise statutory claim in issue but has mistakenly done so in the wrong forum." *Mazurkiewicz*, 356 F. App'x at 522. As stated earlier, although Plaintiff could have raised an employment discrimination claim in the negotiated grievance procedure under the CBA, *see Fernandez*, 471 F.3d at 52; (Doc. No. 75-6 at 40), Plaintiff's May 8, 2013 grievance consisted entirely of generalized complaints of intrusive or harassing behavior on the part of her co-workers and rebuttals of the VA's allegations of insubordination, with no allegations whatsoever of race, color, or gender discrimination (Doc. No. 75-1 at 40–47; *see also* Mar. 2016 Op. at 10 n.2). In fact, Plaintiff did not seek relief for employment discrimination by the VA in any forum until she contacted the EEOC in May 2014, over a year after her termination, and she fails to articulate any reason for this lengthy delay, even though the March 2016 Opinion directed Plaintiff to include "additional facts not currently alleged in the Complaint" regarding efforts by Plaintiff "to raise a discrimination claim" prior to her contacts with the EEOC. (Doc. No. 75-3 at 26–27; Mar. 2016 Op. at 13.) Taken together, these facts, even when construed in the light most favorable to Plaintiff, make it clear that she was *not* "pursuing" her claim for race, color, or gender discrimination "diligently," as required for equitable tolling. *Pace*, 544 U.S. at 418.[4]

To be sure, Wilder alleges that she relied to her detriment on the promises of the Union's president and shop steward that the Union would invoke arbitration on her behalf; she claims

---

[4] Plaintiff also argues that she is entitled to equitable tolling in light of her efforts to obtain unemployment insurance from the New York State Department of Labor ("DOL") in August of 2013. (Doc. Nos. 75-1 at 67, 75-2 at 1–5, 75-3 at 26–27.) The Court is aware of no authority for the proposition that pursuit of unemployment benefits warrants tolling of the limitations period on discrimination claims, nor does Plaintiff allege that she ever attempted to raise claims of race, color, or gender discrimination before the DOL. Therefore, Plaintiff provides no basis for the Court to infer that she "raised the precise statutory claim in issue but . . . mistakenly [did] so in the wrong forum." *Mazurkiewicz*, 356 F. App'x at 522.

that this led her to expect that the Union would pay the costs of any arbitration proceeding and that the Union's refusal to do so left her without remedies via the negotiated grievance procedure. (Doc. Nos. 75-2 at 7; 75-3 at 26.) Indeed, these allegations bear superficial resemblance to the facts in *Fernandez*, a case in which the Second Circuit reinstated an employment discrimination claim brought by a federal employee who brought a "pure discrimination" claim based on race, gender, and national origin, notwithstanding that employee's clear failure to fully exhaust remedies under his union's negotiated grievance process. *Fernandez*, 471 F.3d at 58. In that case, the plaintiff's union unilaterally withdrew from the arbitration, and the plaintiff could not proceed on his own; without a disposition of the arbitration, the plaintiff was unable to bring an appeal to the EEOC, and, eventually, to federal court. *Id.* at 57–58 (finding that the record did "not reveal that [plaintiff] was provided with an opportunity to represent himself or that he had the right to do so" without the Union's involvement). Based on the facts before it, the Second Circuit found that "[t]he failure by [plaintiff] to exhaust administrative remedies available under the CSRA" could be excused because it "was . . . attributable to the [union's] actions in preventing a 'final decision'" from the arbitration that "he could have otherwise appealed." *Id.* at 57; *see id.* at 58 (concluding that the union's actions "left [plaintiff] with no avenue of relief").

As in *Fernandez*, the Union's decision here not to handle Plaintiff's arbitration – notwithstanding Espinal's and Jones's promises to do so – may have hindered Plaintiff's ability to exhaust the negotiated grievance procedure. Nevertheless, this case is clearly distinguishable, since the plaintiff in *Fernandez* timely brought a "pure discrimination claim" in the negotiated grievance procedure, whereas Plaintiff here failed to raise *any* allegations of discrimination in the negotiated grievance process or in her subsequent action before the MSPB. Therefore, in

contrast to the plaintiff in *Fernandez*, Plaintiff here has failed to plausibly allege that the conduct of the Union prevented her from filing a discrimination claim in federal court, since this Court would never have had jurisdiction to hear an appeal from the arbitrator's decision in the first place. *See Delaney* 2009 WL 3199687, at *13; (*see also* Mar. 2016 Op. at 10 n.2.) In fact, Plaintiff waited over a year after her termination before seeking relief for employment discrimination in any forum. (Mar. 2016 Op. at 10 n.2.) Thus, in contrast to Ms. Wilder, the plaintiff in *Fernandez* had "pursue[d]" his discrimination claims "diligently," which is a *sine qua non* of equitable relief. *Pace*, 544 U.S. at 418; *see also Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (noting that "[d]ue diligence on the part of the plaintiff in bringing an action . . . is an essential element of equitable relief" (brackets and internal quotation marks omitted)).[5]

In sum, the Court concludes that Plaintiff has failed to allege any facts that would support a plausible inference that "[D]efendant has actively misled [her] respecting the cause of action," or that Plaintiff "has in some extraordinary way been prevented from asserting [her] rights, or has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum.'" *Mazurkiewicz*, 356 F. App'x at 522. Accordingly, the Court concludes that Plaintiff has failed to "suggest a plausible basis for equitable tolling" and declines to excuse her failure to exhaust administrative remedies. *Lomako*, 440 F. App'x at 3. Thus, her Title VII claim must be dismissed.

---

[5] In reversing the district judge in *Fernandez*, the Second Circuit relied heavily on the notice pleading standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *See Fernandez*, 471 F.3d at 59 (remanding to district court "to consider whether equitable principles excused [plaintiff's] failure to exhaust his administrative remedies" because it could not be said "at this early stage in litigation, that *it appears beyond doubt that* [plaintiff] *can prove no set of facts in support of his claim which would entitle him to relief*" (emphasis added) (citing *Conley*, 355 U.S. at 45–46)). Of course, the Supreme Court has since rejected the *Conley* pleading standard in favor of the plausibility standard articulated in *Twombly* and *Iqbal*, as set forth in Section II above. Nevertheless, although it is unclear whether *Fernandez* remains good law in light of *Twombly* and *Iqbal*, the Court need not further address this issue because, as discussed above, *Fernandez* is sufficiently distinguishable from this case.

IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that Defendant's motion to dismiss is GRANTED. The Clerk is respectfully directed to: (1) terminate the motion pending at docket number 78, (2) mail a copy of this Order to Plaintiff, and (3) close this case. Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be undertaken in good faith, and therefore, Plaintiff may not proceed *in forma pauperis*.

SO ORDERED.

Dated: June 30, 2017
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/30/17